IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-02662-CMA-MJW

JERRY LEWIS DEDRICK,

Plaintiff(s),

v.

J. M. WILNER, et al.,

Defendant(s).

---

**RECOMMENDATION ON PLAINTIFF'S REQUEST FOR IMMEDIATE HELP**
**(Docket No. 38)**

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This matter is before the undersigned pursuant to an Order Referring Case issued by Judge Christine M. Arguello on April 7, 2010. (Docket No. 40).

Now before the court for a report and recommendation is the pro se incarcerated plaintiff's Request for Immediate Help (Docket No. 38) which was filed before the court issued an Order Granting Service by United States Marshal (Docket No. 44). Consequently, in a Minute Order served upon the United States Attorneys Office in Denver and the Bureau of Prisons Legal Services Department at ADX, this court directed the defendants to file a response and gave plaintiff a deadline for filing any reply. (Docket No. 46). In response to that Minute Order, non-party Federal Bureau of Prisons ("BOP") filed a "Notice Submitted by Non-Party Federal Bureau of Prisons in Response to Docket No. 46" (Docket No. 54). Plaintiff then filed a "NOTICE" (Docket No. 57) and a "Response + Reply" (Docket No. 58). The court has considered all of

these filings as well as applicable Federal Rules of Civil Procedure and case law. In addition, the court has taken judicial notice of the court's file. The court now being fully informed makes the following findings, conclusions, and recommendation.

Plaintiff is in the custody of the BOP and is currently housed at the United States Penitentiary in Florence, Colorado. In his Amended Prisoner Complaint (Docket No. 7), filed pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), plaintiff raises an Eighth Amendment claim, asserting that he has degenerative osteoarthritis joint disease in both knees and that the defendants are denying him the use of a knee brace, a lower bunk, soft shoes, and a walking cane, which are allegedly necessary to assist him in his daily activities and to manage his chronic pain. Plaintiff states he was given passes for such things at his previous correctional institution (FCI Beaumont-Medium).

In his Request for Immediate Help (Docket No. 38), which has been construed as a motion for a temporary restraining order ("TRO"), plaintiff states:

> Plaintiff Dedricks is informing this court that he is being "forced" to wear his shower shoes on the compound due to defendant's intentionally + knowingly refused to provide Mr. Dedrick "Medical soft shoes" in which an injunction order is on file within the court in this matter. Please forward this request to judge of said court. request said court enforce plaintiff's emergency injunction order immediately to order said defendant's to provide Mr. Dedrick with medical devises as of medical soft shoes, accordance to medical records + medical passes. Please respond A/S/A/P - "

(Docket No. 38).

"A temporary restraining order ["TRO"] or preliminary injunction is extraordinary relief." Statera, Inc. v. Henrickson, 2009 WL 2169235, *1 (D. Colo. July 17, 2009). Injunctive relief should be granted only when the moving party clearly and unequivocally

demonstrates its necessity. See Schrier v. University of Colo., 427 F.3d 1253, 1258 (10th Cir. 2005). In the Tenth Circuit, the party requesting injunctive relief must establish that: (1) the party will suffer imminent and irreparable injury unless the injunction issues; (2) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood of success on the merits. Id. "In addition to the foregoing factors, a party seeking a [TRO] also must demonstrate clearly, with specific factual allegations, that immediate and irreparable injury will result absent a temporary restraining order." Statera, 2009 WL 2169235, *1.

Furthermore, "[b]ecause the limited purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held, . . . [the Tenth Circuit has] identified the following three types of specifically disfavored preliminary injunctions . . . (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that [he] could recover at the conclusion of a full trial on the merits." Schrier, 427 F.3d at 1258-59 (citation and quotations omitted).

Since the plaintiff is not an attorney, his pleadings have been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).

In response to the plaintiff's Request for Immediate Help, the BOP asserts the following. With regard to plaintiff's assertion that there is an injunction order on file with the court in this matter requiring that he be provided soft shoes, the BOP advises that it

is aware of no such order.  The court takes judicial notice of the fact that no such order has been filed in this case.  In addition, according to the BOP, plaintiff has received medical evaluation and treatment for poloyarthropathy or polyarthritis in his knees, including a consultation with an orthopedic surgeon.  The BOP has determined that a soft shoe pass is not medically indicated for the plaintiff at this time.

The BOP has provided the Declaration of David K. Allred, D.O., the Clinical Director of Medicine for the BOP at the Federal Correctional Complex in Florence, Colorado.  Dr. Allred states the following in that Declaration.  (Docket No. 54-1).  He evaluated the plaintiff on December 2, 2009, with regard to his complaint of pain in his right knee.  At that time, plaintiff requested a knee brace, a cane, and a soft shoe pass.  The results of Dr. Allred's evaluation of the plaintiff "was that Plaintiff has an unspecified polyarthropathy or polyarthritis and that this condition is severe in his right knee and mild to moderate in his left knee."  (Docket No. 54-1 at 4, ¶ 8).  His treatment plan was "that Plaintiff will need a knee brace and a cane in order to ambulate safely.  I therefore issued the proper medical authorizations so that plaintiff can make use of these items.  Plaintiff was also informed at this time that he needs to follow up at sick call and chronic care as needed and to return to medical immediately if his condition worsens."  (Docket No. 54-1 at 4, ¶ 9).  Furthermore, plaintiff was seen again on December 27, 2009, by RN Keller regarding plaintiff's joint instability and his not receiving a soft shoe pass.  RN Keller consulted with Dr. Allred about her evaluation and noted in the record that a cane and knee brace were ordered, that soft shoes were not indicated for knee pain, and that firm shoes were better for knee support.  As part of the plaintiff's treatment plan, an orthopedic evaluation for his knees was scheduled.  Dr. Allred agreed with RN Keller's

conclusion and co-signed on the evaluation and treatment plan the next day. Dr. Jacob Patterson, M.D., then saw plaintiff for his orthopedic evaluation on January 29, 2010. Dr. Patterson recommended weight loss and steroid injections, as well as an arthroscopy if plaintiff developed mechanical symptoms. He concluded that plaintiff would eventually need total knee replacement. Dr. Allred concludes in his Declaration that "[a]fter review of Plaintiff's medical records, indicate that a soft shoe pass is not medically indicated at this time. Plaintiff's condition will continue to be monitored and evaluated as medically indicated." (Docket No. 54-1 at 5, ¶ 12).

In response, plaintiff points to the passes issued at his prior correctional facility for the soft shoes and other items. (See Docket No. 18, Exhibits filed in Support of Plaintiff's Motion for Summary Judgment). He claims the doctors at FCI Beumont told plaintiff to have his medical soft shoes renewed at his next institution, to no avail.

This court recommends that the plaintiff's motion be denied because he has not established a substantial likelihood of success on the merits with respect to his Eighth Amendment claim regarding the denial of his request for soft shoes. "[P]risoners have an Eighth Amendment right to adequate medical care . . . ." Oxendine v. Kaplan, 241 F.3d 1272, 1276 (10th Cir. 2001). "In keeping with the principle that government officials are generally afforded wide latitude when fulfilling their discretionary functions, . . . however, in cases where prisoners allege that inadequate or delayed medical care violated their Eighth Amendment rights, it has been established that '[p]rison officials violate the Eighth Amendment [only] when they are deliberately indifferent to the serious medical needs of prisoners in their custody.'" Id. "To establish deliberate indifference, a prisoner must demonstrate more than mere negligence; a negligent failure to provide

adequate medical care, even one constituting medical malpractice, does not rise to the level of a constitutional violation." Alejo v. Gonzalez, 2000 WL 64317, *1 (10th Cir. Jan. 26, 2000). See Estelle v. Gamble, 429 U.S. 97, 105-06 (1976) (A complaint "that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."). Rather, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106.

"The test for constitutional liability of prison officials 'involves both an objective and a subjective component.'" Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005). As the Tenth Circuit has explained:

> to properly set forth an Eighth Amendment claim on which relief may be granted, [the prisoner] must set forth facts demonstrating [1] that his alleged medical need . . . was sufficiently serious to meet the objective element of the deliberate indifference test, and [2] that the Defendants' delay in meeting that need caused him substantial harm. . . . Finally, to meet the subjective element of the deliberate indifference test, [the prisoner] must allege facts supporting an inference [3] that Defendants knew about and disregarded a substantial risk of harm to his health or safety.

Oxendine v. Kaplan, 241 F.3d at 1276-77 (quotations omitted).

Here, at best, plaintiff has shown a disagreement with the current prescribed course of treatment, which does not include the use of soft shoes. Dr. Allred opined that soft shoes are not indicated for knee pain and that firm shoes are better for knee support. (See Docket No. 54-1 at 11). "[A] prisoner who merely disagrees with a diagnosis or a prescribed course of treatment [however] does not state a constitutional violation." See Perkins v. Kansas Dep't of Corrections, 165 F.3d 803, 811 (10th Cir. 1999). Furthermore, the fact that the plaintiff may have had a permit for soft shoes at

another facility merely establishes a medical difference of opinion, which is not actionable under the Eighth Amendment. Thompson v. Gibson, 289 F.3d 1218, 1222 (10th Cir. 2002); Hanson v. Smith, 9 F.3d 1557 (10th Cir. 1993) (Table) ("Even should medical opinions differ among prison doctors, such a difference of opinion does not support a claim of cruel and unusual punishment.").

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the Plaintiff's Request for Immediate Help (Docket No. 38) be **denied**.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Dated: May 19, 2010  s/ Michael J. Watanabe
Denver, Colorado  Michael J. Watanabe
United States Magistrate Judge